Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW WALKER,<br><br>Plaintiff,<br><br>vs.<br><br>CORE-MARK HOLDING COMPANY, INC., STUART W. BOOTH, ROCKY DEWBRE, LAURA FLANAGAN, ROBERT G. GROSS, SCOTT E. MCPHERSON, DIANE RANDOLPH, HARVEY L. TEPNER, and ROSEMARY TURNER,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Matthew Walker ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to

Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Core-Mark Holding Company, Inc. ("Core-Mark" or the "Company") and the members of Core-Mark's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Core-Mark will be acquired by Performance Food Group Company ("Performance Food Group" or "PFG") through PFG's subsidiaries Longhorn Merger Sub I, Inc. ("Merger Sub 1") and Longhorn Merger Sub II, LLC ("Merger Sub 2") (the "Proposed Transaction").

2. On May 18, 2021, Core-Mark and Performance Food Group issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 17, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, Core-Mark stockholders will receive: (i) $23.875 per share in cash, and (ii) 0.44 shares of PFG common stock for each share of Core-Mark common stock they own (the "Merger Consideration").

3. On July 14, 2021, Core-Mark filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which

recommends that Core-Mark stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things, the financial projections for Core-Mark and PFG, and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Barclays Capital Inc. ("Barclays"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Core-Mark's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to

render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates two distribution center facilities and a consolidating warehouse in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Core-Mark.

9. Defendant Core-Mark is a Delaware corporation, with its principal executive offices located at 1500 Solana Boulevard, Suite 3400 Westlake, Texas 76262 and additional properties located in Corona and Los Angeles, California. Core-Mark is one of the largest marketers of fresh, food and broad-line supply solutions to the convenience retail industry in North America. Core-Mark's shares trade on the Nasdaq Global Select Market under the ticker symbol "CORE."

10. Defendant Stuart W. Booth ("Booth") has been a director of the Company since August 2005.

11. Defendant Rocky Dewbre ("Dewbre") has been a director of the Company since January 2019.

12. Defendant Laura Flanagan ("Flanagan") has been a director of the Company since June 2016.

13. Defendant Robert G. Gross ("Gross") has been a director of the Company since October 2011.

14. Defendant Scott E. McPherson ("McPherson") has been President, Chief Executive Officer ("CEO"), and a director of the Company since July 2018. Defendant McPherson previously served as the Company's President and Chief Operations Officer from October 2017 to June 2018, and as Senior Vice President ("SVP") - Business Operations and Development from January 2015 to October 2017.

15. Defendant Diane Randolph ("Randolph") has been a director of the Company since January 2020.

16. Defendant Harvey L. Tepner ("Tepner") has been a director of the Company since August 2004.

17. Defendant Rosemary Turner ("Turner") has been a director of the Company since May 2021.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Performance Food Group is a Delaware corporation with its principal executive offices located at 12500 West Creek Parkway, Richmond, Virginia 23238. It is a customer-centric foodservice distribution leader with roots that date back to a

grocery peddler in 1885. PFG today has a nationwide network of over 100 distribution facilities, thousands of associates and valued suppliers across the country. PFG markets and delivers quality food and related products to over 200,000 locations including independent and chain restaurants, schools, business and industry locations, healthcare facilities, vending distributors, office coffee service distributors, big box retailers, theaters and convenience stores. Performance Food Group's shares trade on the New York Stock Exchange under the ticker symbol "PFGC."

20. Merger Sub 1 is a Delaware corporation and a direct wholly owned subsidiary of PFG.

21. Merger Sub 2 is a Delaware limited liability company and a direct wholly owned subsidiary of PFG.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22. Core-Mark is one of the largest marketers of fresh, food and broad-line supply solutions to the convenience retail industry in North America. It is one of two national distributors to the convenience store industry in the U.S. and is the largest distributor in Canada. The Company's origins date back to 1888, when Glaser Bros., a family-owned-and-operated candy and tobacco distribution business, was founded in San Francisco, California. Core-Mark offers a full range of products, marketing programs and technology solutions to approximately 40,000 customer locations in the U.S. and Canada through 27 distribution centers in the U.S. and five in Canada

(excluding two distribution facilities Core-Mark operates as a third-party logistics provider). The Company services traditional convenience stores, grocers, drug stores, mass merchants, liquor and specialty stores, and other stores that carry convenience products.

23. On May 6, 2021, Core-Mark announced its first quarter 2021 financial results. Net income increased 98% to $8.5 million during the quarter, compared to $4.3 million in the first quarter of 2020 ("Q1 2020"). Adjusted EBITDA increased 25% to $44.3 million, compared to $35.3 million for Q1 2020. Reflecting on the Company's results, defendant McPherson stated:

> We continue to drive positive momentum in the business by executing on our strategic priorities made possible by the hard work and dedication of the Core-Mark family and strong partnerships with our customers and vendors. Results for the first quarter also reflect positive momentum in the COVID-19 recovery with continued sequential quarter improvement in sales mix and margins headlined by March representing the first month of positive same store growth in non-cigarettes since the start of the pandemic. The quarter also saw the early benefit of our sales force restructuring and continued improvement in our warehouse and delivery key performance metrics. As we enter the second quarter we are well positioned to deliver on our commitments to our customers and shareholders.

**The Proposed Transaction**

24. On May 18, 2021, Core-Mark and Performance Food Group issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> RICHMOND, Va. & WESTLAKE, Texas-- Performance Food Group Company (PFG) (NYSE: PFGC) and Core-Mark Holding Company, Inc. (Core-Mark) (NASDAQ: CORE) today announced that they have entered into a definitive agreement pursuant to which PFG will acquire Core-Mark in a stock and cash transaction.
>
> ***
>
> Under the terms of the transaction, which has been unanimously approved by the Board of Directors of each company, Core-Mark shareholders will receive $23.875 per share in cash and 0.44 PFG shares for each Core-Mark share. The transaction values Core-Mark at approximately $2.5 billion, including Core-Mark's net debt. Upon closing of the transaction, Core-Mark shareholders will own approximately 13% of the combined company. Core-Mark expects to continue paying its current quarterly dividend through the completion of the transaction.
>
> The transaction will create a best-in-class convenience business within PFG's Vistar segment that will include the Core-Mark and Eby-Brown

businesses. The expanded convenience business will operate under the Core-Mark brand and will be headquartered in Westlake, Texas with Eby-Brown maintaining ongoing operations in Naperville, Illinois. Scott McPherson will continue in his role as President and Chief Executive Officer of Core-Mark, following closing of the transaction. Tom Wake will continue as President and Chief Executive Officer of Eby-Brown, reporting to Mr. McPherson.

"We are excited to announce the strategic acquisition of Core-Mark and welcome the organization to Performance Food Group," said George Holm, PFG Chairman, President & Chief Executive Officer. "Core-Mark is an outstanding company that we believe will significantly strengthen our business diversification and expansion into the convenience store channel. Core-Mark brings a highly skilled and experienced workforce along with an experienced senior leadership team, which will be valuable additions to the PFG family of companies. This transaction will also combine Core-Mark's footprint and operational excellence with PFG's existing capabilities in both convenience and foodservice. The deal comes with strong strategic and financial merits which we believe will generate significant customer benefits and help PFG continue to create long term shareholder value. The two organizations have similar cultures, which we

expect will facilitate a smooth integration and transition process. We look forward to getting to know the associates at Core-Mark better and building a strong future as one organization."

"On behalf of PFG's Vistar segment, I echo George's enthusiasm for this transaction," said Patrick Hagerty, Executive Vice President of PFG and Chief Executive Officer of Vistar. "Adding convenience store distribution in 2019 built up the core strength of our organization, providing another important avenue for growth. Bringing Core-Mark to PFG will continue this journey and complement our existing portfolio. I look forward to us bringing together the best talent in convenience and welcoming Core-Mark associates at close."

Core-Mark is one of the largest wholesale distributors to the convenience retail industry in North America with approximately $17 billion in net sales. The company has approximately 7,500 employees and operates 32 distribution centers across the United States and Canada. Core-Mark services approximately 40,000 customer locations in all 50 states in the U.S., five Canadian provinces and two Canadian territories.

"This transaction brings together two companies known for their customer-focused approach and dedication to their employees," said Scott

McPherson, Core-Mark President and Chief Executive Officer. "As part of our continuous focus to maximize shareholder value and better serve our customers, our Board evaluated the transaction and determined this combination provides our investors immediate value and the opportunity to participate in the upside potential of being part of a larger, diversified and customer-centric supplier in the foodservice and convenience retail industry. The combination of our two highly complementary businesses creates an even stronger platform to drive growth, as we deliver a best-in-class offering to our customers. I'd like to thank the entire Core-Mark team for their hard work and focus in helping us reach this exciting milestone."

Upon closing of the transaction, at least one current Core-Mark director will be added to the PFG Board of Directors.

**Insiders' Interests in the Proposed Transaction**

25. Core-Mark insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Core-Mark.

26. Notably, certain Core-Mark insiders have secured positions for themselves with the surviving corporation following the merger. For example, defendant McPherson will continue as SVP, Core-Mark President and CEO, and one current member of the Board will be appointed to serve on the board of the combined company following completion of the merger.

27. In addition, if they are terminated in connection with the Proposed Transaction, Company insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity($)(2) | Total ($) |
|---|---|---|---|
| Scott E. McPherson | $2,127,800 | $3,753,261 | $5,881,061 |
| Christopher M. Miller | $1,217,845 | $2,338,875 | $3,556,721 |
| Christopher K. Hobson | $1,125,764 | $2,338,875 | $3,464,639 |
| William G. Stein | $1,070,604 | $2,338,875 | $3,409,479 |
| Christopher M. Murray | $1,043,436 | $1,916,411 | $2,959,847 |

## The Proxy Statement Contains Material Misstatements or Omissions

28. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Core-Mark's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

29. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning, the financial projections for Core-Mark and PFG

and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Barclays.

***Material Omissions Concerning the Company's and PFG's Financial Projections and Barclays' Financial Analyses***

30. The Proxy Statement fails to disclose material information concerning the financial projections for Core-Mark and PFG.

31. For each of the Core-Mark Forecasts and PFG Forecasts, the Proxy Statement fails to disclose: (i) all line items underlying adjusted EBITDA and earnings per share; and (ii) quantification of the assumptions underlying each of the forecasts.

32. The Proxy Statement also omits material information regarding Barclays' financial analyses.

33. The Proxy Statement describes Barclays' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Barclays' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Core-Mark's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

34. With respect to Barclays' *Selected Comparable Company Analysis-Core-Mark* and *Selected Comparable Company Analysis-PFG*, the Proxy Statement fails to

disclose the individual multiples and financial metrics for each of the comparable companies observed by Barclays in the analyses.

35. With respect to Barclays' *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Barclays in the analysis.

36. With respect to Barclays' *Discounted Cash Flow Analysis-Core-Mark*, the Proxy Statement fails to disclose: (i) quantification of the terminal year estimate of unlevered free cash flow for Core-Mark; (ii) the range of terminal values for the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%; and (iv) the number of fully diluted outstanding shares of Core-Mark.

37. With respect to Barclays' *Discounted Cash Flow Analysis-PFG*, the Proxy Statement fails to disclose: (i) quantification of the terminal year estimate of unlevered free cash flow for PFG; (ii) the range of terminal values for PFG; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%; and (iv) the number of fully diluted outstanding shares of PFG.

38. With respect to Barclays' *Discounted Cash Flow Analysis-Merger Consideration*, the Proxy Statement fails to disclose: (i) the terminal year metric used in the analysis and quantification thereof; (ii) the terminal values for the pro forma company; (iii) quantification of the inputs and assumptions underlying the discount

rates ranging from 7.5% to 8.5%; and (iv) the number of fully diluted outstanding shares of PFG and Core-Mark.

39. With respect to Barclays' *Premiums Paid Analysis*, the Proxy Statement fails to disclose the premiums paid in each of the transactions observed by Barclays.

40. The omission of this material information renders the statements in the "Certain Unaudited Prospective Financial Information Reviewed by the Core-Mark Board" and "Opinion of Core-Mark's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Core-Mark will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

42. Plaintiff repeats all previous allegations as if set forth in full.

43. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Core-Mark's and PFG's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Barclays. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

46. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.

Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**

**Claims Against the Individual Defendants for**

**Violations of Section 20(a) of the Exchange Act**

48. Plaintiff repeats all previous allegations as if set forth in full.

49. The Individual Defendants acted as controlling persons of Core-Mark within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Core-Mark, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to

the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

52. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Core-Mark's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Core-Mark, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Core-Mark stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 11, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: _/s/ Joel E. Elkins_
Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*